IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: BLOOMFIELD NURSING OPERATIONS, LLC, et al., <br><br>  Debtors, <br><br> THE STATE OF NEW MEXICO, ex rel. Hector H. Balderas, Attorney Genral, <br><br>  Appellant, <br><br> v. <br><br> BLOOMFIELD NURSING OPERATIONS, LLC, et al., <br><br>  Appellees. | Civil Action No. 4:18-cv-00374-O |

## MEMORANDUM OPINION AND ORDER

Appellant the State of New Mexico (the "State") appeals the Order Denying State of New Mexico's Motion for Order Confirming Automatic Stay Inapplicable to Medicaid Fraud Enforcement Action (Bankruptcy Docket No. 171), signed May 1, 2018, issued by the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division ("Bankruptcy Court"). Having considered the briefing, the record, the applicable law, and for the reasons stated below, the Court **REVERSES** the Bankruptcy Court's ruling of May 1, 2018.

**I.     BACKGROUND**

1

Prior to summarizing the proceedings before the Bankruptcy Court, the Court sets forth the background facts concerning the State's enforcement action against the Bloomfield Debtors,[1] the Preferred Care Debtors,[2] and the Management Debtors[3] (collectively, the "Debtors").

**A. The New Mexico AG Suit**

The Bloomfield Debtors operated and managed skilled nursing facilities in New Mexico from April 1, 2007 until October 31, 2012. R. 8, 189. On October 31, 2012, Preferred Care, Inc. purchased the leasehold interests and all assets used in connection with operating the facilities. *Id.*

In December of 2014, the State filed a lawsuit (the "New Mexico AG Suit") in the First Judicial District Court of Santa Fe County (the "New Mexico State Court") against numerous defendants.[4] *Id.* at 19. The State's enforcement action seeks, *inter alia*, treble damages and civil penalties for false claims submitted to the Medical Assistance Program ("Medicaid"), under New Mexico's Fraud Against Taxpayers Act ("FATA")[5] and Medicaid Fraud Act,[6] as well as civil penalties, restitution, and injunctive relief for misrepresentations to consumers and unconscionable trade practices, under the state Unfair Practices Act.[7] Appellant's Br. 3–4

---

[1] The "Bloomfield Debtors" include Bloomfield Nursing Operations, LLC; Casa Real Nursing Operations, LLC; Red Rocks Nursing Operations, LLC; Cathedral Rock Corporations; Cathedral Rock Investments, Inc.; Cathedral Rock Management I, Inc.; Cathedral Rock Management, LP; Española Valley Nursing Operations, LLC; Santa Fe Nursing Operations, LLC; and Sunshine Haven Nursing Operations, LLC.

[2] The "Preferred Care Debtors" include thirty-four jointly administered debtors.

[3] The "Management Debtors" are two jointly administered debtors.

[4] Among the defendants named in the New Mexico AG Suit are the Bloomfield Debtors, some, but not all, of the Preferred Care and Management Debtors, Mr. Thomas Scott, and Mr. C. Kent Harrington.

[5] NMSA §§ 44-9-1 – 44-9-14.

[6] NMSA §§ 30-44-1 – 30-44-8.

[7] NMSA §§ 57-12-1 – 57-12-26.

The State alleges that the Debtors chronically understaffed their nursing facilities, thereby failing to deliver the basic care services they were paid to provide. *Id.* at 4. Specifically, the State alleges that the Debtors were paid thousands of dollars per month for each resident's care, while the "elderly and vulnerable citizens were left lying in their own feces and urine for hours at a time, suffered pressure sores, did not get enough assistance to eat and drink at mealtimes, and were not bathed or groomed properly."[8] *Id.*

To support its understaffing theory, the State uses a "widely-accepted industrial engineering simulation" that calculates the time and manpower needed to perform daily care tasks in a hypothetical setting. R. 191. The State contends that when it ran the Debtors' staffing and resident information through the simulation, the results showed that it would have been physically and mathematically impossible for the Debtors to have provided the required level of care to their residents.[9] *Id.*

### B. The Bankruptcy Court's Hearing

As of result of the New Mexico AG Suit and other lawsuits, the Bloomfield Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. R. 8. Following this

---

[8] In addition to the engineering simulation, the State presented the thirty-six witness statements regarding the conditions of the Debtors' nursing facilities. The witness statements include first-hand accounts from residents, family of residents, certified nursing assistants, kitchen staff, and nursing home inspectors. Among the witness statements are claims that residents would: 1) deteriorate rapidly at one of the Debtors' nursing facility and improve greatly once transferring to a different rehabilitation center; 2) wait significant times for assistance; 3) develop Stage IV pressure sores—which are pressure sores that have advanced to the point where tissue loss exposes bone, tendon, or muscle—due to inadequate care; 4) saturate their clothing and bedding with urine because their calls went ignored; 5) have feces-soiled clothing because their calls went ignored; 6) develop urinary tract infections; 7) lose weight because they were not being fed, in the cases of those who could not eat independently; 8) go weeks without a shower; 9) constantly fall; and 10) die as a result of their care. R. 74–141.

[9] The Bloomfield Debtors contest the fact that they were understaffed, stating that they complied with the relevant New Mexico statutes. R. 189. The State claims that the Debtors only passed inspections because the nursing facilities were aware of the planned inspections and increased staffing in anticipation of them. *Id.* at 75.

bankruptcy filing, the New Mexico State Court entered an order staying the entire New Mexico AG Suit pursuant to 11 U.S.C. § 362(a). *Id.* The State then filed a motion seeking an order from the Bankruptcy Court confirming that the State's enforcement action against the Bloomfield Debtors was not subject to the automatic stay, pursuant to 11 U.S.C. § 362(b)(4)—the police and regulatory power exception to the automatic stay. *Id.* at 11.

The Bankruptcy Court denied the State's motion. In doing so, the Bankruptcy Court noted that the State was only seeking one form of non-monetary relief: injunctive relief as a remedy for alleged violations of the Unfair Practices Act. *Id.* at 10. The Bankruptcy Court also stated that it was unconvinced of the State's given public policy reasons for pursuing the New Mexico AG Suit. *Id.* at 13. Applying the relevant Fifth Circuit case law, the Bankruptcy Court concluded that the State failed to carry its burden to satisfy the requisite tests to be allowed an exception under § 362(b)(4). *Id.* at 14.

## II. STANDARD OF REVIEW

A district court sits as an appellate court when reviewing a bankruptcy court's decision in a "core proceeding." *In re Renaissance Hosp. Grand Prairie, Inc.*, 713 F.3d 285, 293 (5th Cir. 2013) (citing *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). This appeal is from a final order of the Bankruptcy Court in a core proceeding. Thus, the Court has jurisdiction over the appeal of the Bankruptcy Court's order pursuant to 28 U.S.C. § 158(a)(1). The district court reviews the bankruptcy court's legal conclusions de novo. *Renaissance*, 713 F.3d at 294 (citing *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003)). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. A finding of fact is clearly erroneous only if the district court is left with "the definite and

firm conviction that a mistake has been committed." *In re Perry*, 345 F.3d at 308–09 (citing *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003)). In reviewing the facts, the Court must give due regard to the opportunity of the bankruptcy judge to assess the credibility of the witnesses. *Dennis*, 330 F.3d at 701. Ultimately, the bankruptcy court has "great latitude" when conducting a bench trial. *See In re Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992) (citing *Cranberg v. Consumers Union of U.S., Inc.*, 756 F.2d 382, 392 (5th Cir. 1985)).

### III. ANALYSIS

When a party declares a Chapter 11 bankruptcy, normally, an automatic stay is imposed on any other pending or future actions against the party. Under the Bankruptcy Code,

> [e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title…operates as a stay, applicable to all entities, of the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a). "The purpose of the automatic stay is to give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." *Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5964, 6296–97; *see also Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ("The purposes of the bankruptcy stay under 11 U.S.C. § 362 are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse.").

5

The automatic stay provision is not absolute; the text of the § 362(a) allows for exceptions. 11 U.S.C. § 362(b)(4), the exception at issue here, provides that filing of a petition in bankruptcy does not operate as a stay

> of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority…to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

*Id.* Section § 362(b)(4) "helps to ensure that debtors do not use a declaration of bankruptcy to avoid the consequences of their actions that threaten the public interest." *In re Halo Wireless, Inc.*, 684 F.3d 581, 588 (5th Cir. 2012) (citing *S.E.C. v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000)).

To determine whether proceedings fall within the § 362(b)(4) exception, courts have applied two tests: the pecuniary purpose test and the public policy test. *Halo*, 684 F.3d at 588 (citing *In re Nortel Networks, Inc.*, 669 F.3d 128, 139 (3d Cir. 2011)). The Fifth Circuit has adopted the tests as follows:

> "The pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health." *Nortel*, 669 F.3d at 139–40. "The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights." *Id.* at 140. Thus, "[i]f the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies. If, on the other hand, the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable." *Id.*

*Halo*, 684 F.3d at 588. The tests "'contemplate that the bankruptcy court, after assessing the totality of the circumstances, [will] determine whether the particular regulatory proceeding is designed primarily to protect the public safety and welfare[ ] or represents a governmental attempt to recover from the property of the debtor estate….'" *Halo*, 684 F.3d at 588 (quoting *In re McMullen* 386 F.3d 320, 325 (1st Cir. 2004)).

There are two main issues of contention between the State and the Bloomfield Debtors on appeal: 1) whether the Bankruptcy Court properly applied the pecuniary purpose and public policy tests; and 2) whether the 11 U.S.C. § 362(b)(4) exception applies to the automatic stay levied on the New Mexico AG Suit.

### A. The Parties' Arguments

The State argues that the pecuniary purpose and public policy tests should be objective, i.e. the statute's stated purpose should be the only thing considered when applying the test. The State claims that the Bankruptcy Court applied a subjective test that analyzed the legitimacy of the State's enforcement action. Finally, the State concludes that the 11 U.S.C. § 362(b)(4) exception should apply because the New Mexico AG Suit was brought pursuant to enforcing the State's police power.

The Bloomfield Debtors argue that the Bankruptcy Court properly applied the pecuniary purpose and public policy tests; they claim that the State is conflating the tests with a Supreme Court ruling preventing bankruptcy courts from analyzing the legitimacy of enforcement actions. The Bloomfield Debtors conclude that the 11 U.S.C. § 362(b)(4) exception should not apply because the State is bringing this action for solely financial purposes. They further remark that the State's proposed relief for a preliminary injunction is inapplicable because there was a cessation of any activity to enjoin.

### B. Discussion

1. <u>The Bankruptcy Court did not exceed the scope of its authority in applying the pecuniary purpose and public policy tests.</u>

The pecuniary purpose test asks a bankruptcy court to weigh whether an action primarily protects the public safety and health or a pecuniary interest. The public policy test asks whether the purpose of a law is primarily to protect the public health and welfare or to protect the

government's pecuniary interest. The Bankruptcy Court, in applying the pecuniary purpose test, concluded that the State's "primary goal…is to make New Mexico whole through the recovery of funds." R. 14. Similarly, in applying the public policy test, the Bankruptcy Court concluded that the State "fail[ed] to carry its burden [because]…[m]ost, if not all, of the state statutes upon which New Mexico asserts are compensatory in nature designs to remediate damages sustained by discrete and identifiable individuals or entities as opposed to promote public policy." *Id.*

The State claims that the Bankruptcy Court impermissibly considered the legitimacy of its enforcement action in its application of these tests. This is incorrect. The State cites the Supreme Court's ruling in *Board of Governors of Federal Reserve System v. MCorp*, 502 U.S. 32 (1991) to support its argument. In *MCorp*, the petitioners argued that, for § 362(b)(4) to be applied, a court "must first determine whether the proposed exercise of police or regulatory power is legitimate." *Id.* at 39–40. The Supreme Court stated that this broad reading of the stay provision "would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity." *Id.* at 40. The Supreme Court then rejected the petitioners' reading of § 362(b)(4) due to the "problematic" conflicts it would create between the "broad discretion Congress has expressly granted many administrative entities and…the limited authority Congress has vested in bankruptcy courts." *Id.*

*MCorp* holds that a bankruptcy court may not make a preliminary or independent determination of the legitimacy of an enforcement action. However, bankruptcy courts are allowed to: 1) decide whether the primary purpose of an action is to protect pecuniary interests or to protect public safety and health; and 2) decide whether the purpose of the law is to promote public safety and welfare or protect pecuniary interests. The pecuniary purpose test and the public policy test are different from the rule articulated in *MCorp*; they are two separate paradigms. While a

8

bankruptcy court's determination of the primary aim of an enforcement action may seem like it is attacking the legitimacy of the action, it should not be considered illegitimate if the bankruptcy court is staying within the bounds of the outcomes provided by the pecuniary purpose and public policy tests.

In this instance, the Bankruptcy Court properly stayed within the bounds of the pecuniary purpose and public policy tests. In applying the tests, the Bankruptcy Court considered all the relevant facts and concluded that the New Mexico AG Suit had a primarily pecuniary purpose. There is nothing in the record that shows the Bankruptcy Court considered the validity or legitimacy of the New Mexico AG Suit outside of the realm of the pecuniary purpose and public policy tests.

    **2.** <u>The New Mexico AG Suit should be allowed to continue because it falls within the 11 U.S.C. § 362(b)(4) exception to the automatic stay.</u>

The Bankruptcy Court concludes that the State's arguments are not convincing because: 1) there is no ongoing conduct to deter, police, or regulate because the Bloomfield Debtors have not operated since 2012; 2) the State's only non-monetary relief sought is a preliminary injunction; and 3) the statutes brought by the State are compensatory in nature and designed to remediate damages.

First, the fact that there is no ongoing illegal conduct does not bar the State's requested relief. *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) lays out a court's power to grant injunctive relief even when there is discontinuance of illegal conduct. The purpose of an injunction is to prevent future violations, but the moving party must satisfy the court by showing that relief is needed, i.e. "there [must] exist[ ] some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Id.* at 633. The issue may be moot

9

if a defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated, but "the burden is a heavy one." *Id.*

The Bloomfield Debtors do not show that there is no reasonable expectation the wrong will be repeated; the fact that they have not operated in seven years does not prevent them from beginning new operations in year eight. Additionally, the lag of litigation presents the constant possibility of a wrongdoer ceasing their illegal conduct by the time the actual prosecution begins, but this does not mean that those wrongful acts should go unpunished. Allowing such actions to go unpunished would go against the purpose of the § 362(b)(4) exception, which is to "prevent a debtor from frustrating necessary governmental functions by seeking refuge in bankruptcy court." *Halo*, 684 F.3d at 588.

Regardless, this Court is not ruling on the merits of the injunction. The pertinent issue here is whether the § 362(b)(4) exception should apply to the New Mexico AG Suit. The Bankruptcy Court considered the injunction improper because it believes the injunction could not possibly serve police or regulatory purposes if there is a cessation of activity, but *W.T. Grant Co.* shows that it is possible. To that end, the action for a preliminary injunction should be excepted to the automatic stay because it is being brought for police or regulatory purposes. There are also questions of fact remaining (e.g., if there is a cognizable danger of recurrent violation or if the Bloomfield Debtors can show no reasonable expectation that the wrong will be repeated) that should be litigated in New Mexico State Court as to the merits of the injunction.

Second, the fact that monetary relief is sought does not preclude an action from falling within the scope of 11 US.C. § 362(b)(4). The plain language of the statute allows for actions of a money judgment, just not *enforcement* of a money judgment. *Id.*; *see also Halo*, 684 F.3d at 587 (citing *S.E.C. v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000)) (stating that the § 362(b)(4) exception

does not allow enforcement of a money judgment against a debtor, but it does allow the entry of a money judgment). Further, "[w]hen the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity—it is attempting to curb certain behavior…by making the behavior that much more expensive." *Brennan*, 230 F.3d at 72–73. "[M]ost government actions which fall under this exemption have some pecuniary component…This does not abrogate their police power function. Only if the action is pursued '*solely* to advance a pecuniary interest of the governmental unit' will the automatic stay bar it." *In re First Alliance Mortg. Co.*, 263 B.R. 99, 109–10 (9th Cir. BAP 2001) (quoting *In re Universal Life Church*, 128 F.3d 1294, 1299 (9th Cir. 1997)) (emphasis added). Thus, asking for a money judgment does not prohibit an action from using police or regulatory power pursuant to § 362(b)(4).

Lastly, the Medicaid Fraud Act, FATA, and the Unfair Practices Act are not compensatory in nature just because they allow for damages. While the reasoning for this is already explained above, it is important to note that there is evidence the statutes are of the type that fall under the § 362(b)(4) exception.

"Where a governmental unit is suing a debtor to prevent or stop violation of *fraud*, environmental protection, *consumer protection*, safety, or similar police or regulatory laws, or attempting to fix damages of such a law, the action or proceeding is not stayed under the automatic stay." *Commonwealth Oil*, 805 F.2d at 1182–83 (quoting S. Rep. No. 989, 95th Cong. 2d Sess. 52 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838) (emphasis added).

The Medicaid Fraud Act, FATA, and the Unfair Practices Act fall plainly within 11 U.S.C. § 362(b)(4)'s purpose to stop violations of fraud and consumer protection laws. The Court of Appeals of New Mexico has stated that "pursuing Medicaid fraud under the [Medicaid Fraud Act] is substantively similar to claims pursued under the federal False Claims Act…." *State ex rel. King*

*v. Behavioral Home Care, Inc.* 346 P.3d 377, 384 (N.M. Ct. App.) (citing 31 U.S.C. § 3729(a)(A)(2006)). Similarly, the Supreme Court of New Mexico has stated that FATA's federal analogue is the False Claims Act. *State ex rel. Foy v. Austin Capital Mgmt., Ltd.*, 335 P.3d 1, 7 (N.M. 2015). According to its sponsor, the False Claims Act was adopted "for the purpose of punishing and preventing…frauds." *United States v. Bornstein*, 423 U.S. 303 n.5 (1976) (quoting Cong. Globe, 37th Cong., 3d Sess., 952 (remarks of Sen. Howard)). Other federal courts have held that proceedings under the False Claims Act fall under 11 U.S.C. § 362(b)(4)'s exception to the automatic stay. *See In re Commonwealth Cos., Inc.*, 913 F.2d 518, 525 (8th Cir. 1990) ("it seems inescapable then that a governmental action attempting to fix damages for violation of the FCA comes within § 362(b)(4)"); *United States ex rel. Fullington v. Parkway Hosp. Inc.*, 351 B.R. 280, 288–90 (E.D.N.Y. 2006) ("Although it is undeniable that the FCA has, as one of its purposes, the objective of providing restitution for the government…it is well-settled that the statutory scheme…also has the distinct public policy purpose of punish and deterring fraud…."); *United States ex rel. Doe v. X, Inc.*, 246 B.R. 817, 818–20 (E.D. Va. 2000) ("there is amply authority holding that laws, such as the False Claims Act, that are designed to prevent or stop fraud, or to fix damages for fraud already committed, are police or regulatory laws"); *United States ex rel. Marcus v. NBI, Inc.*, 142 B.R. 1, 3 (D.D.C. 1992).

Further, the Unfair Practices Act is a consumer protection statute that falls plainly within 11 U.S.C. § 362(b)(4)'s stated purpose. The Court of Appeals of New Mexico has stated that "the [Unfair Practices Act] is designed to provide a remedy against misleading identification and false or deceptive advertising…directed at the public at large as *consumers*." *Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1096 (N.M. Ct. App. 2007) (emphasis added). Other federal courts have held that proceedings under consumer protection statutes fall under 11 U.S.C. § 362(b)(4)'s

exception to the automatic stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1107–09 (9th Cir. 2005); *In re Gandy*, 327 B.R. 796, 801–04 (Bankr. S.D. Tex. 2005); *First Alliance*, 263 B.R. at 107–10; *In re Luskin's, Inc.*, 213 B.R. 107, 110–11 (D. Md. 1997).

Thus, there is overwhelming evidence that New Mexico's Medicaid Fraud Act, FATA, and Unfair Practices Act are all statutes that fall under the purpose of the 11 U.S.C. § 362(b)(4) exception to the automatic stay because the statutes fall in line with the type of laws contemplated by Congress, and other courts across the country have reached similar conclusions with similar statutes. Therefore, the Bankruptcy Court erred in determining that the New Mexico AG Suit failed the public policy test because the underlying statutes have provisions to recover damages.

**IV. CONCLUSION**

The Bankruptcy Court did not exceed the scope of its authority in applying the pecuniary purpose and public policy test. However, the Bankruptcy Court erred in determining that the New Mexico AG Suit did not fall under 11 U.S.C. § 362(b)(4)'s exception to the automatic stay. This is because: 1) cessation of the Bloomfield Debtors' alleged wrongful activity does not prevent the permissibility of a preliminary injunction, the merits of which should be litigated in New Mexico State Court; 2) seeking damages and entry of a money judgment does not abrogate an enforcement action of its police power function because levying financial penalties can be used to deter certain behavior; and 3) the Medicaid Fraud Act, FATA, and the Unfair Practices Act fall squarely within 11 U.S.C. § 362(b)(4)'s purpose to stop violations of fraud and consumer protection laws.

For the reasons herein stated and after conducting a de novo review of the Bankruptcy Court's decision, the Court **REVERSES** the Bankruptcy Court's Order Denying State of New Mexico's Motion for Order Confirming Automatic Stay Inapplicable to Medicaid Fraud Enforcement Action, signed May 1, 2018. The New Mexico AG Suit is not stayed by the

13

Bloomfield Debtors' bankruptcy, pursuant to the § 362(b)(4) police and regulatory power exception. The State may proceed with its action, up until the point that damages are fixed through entry of judgment. In accordance with Rule 8021(a)(3) of the Federal Rules of Bankruptcy Procedure, costs of this appeal are taxed against Appellee Bloomfield Nursing Operations, LLC, *et al.* and in favor of Appellant.

**SO ORDERED** on this **26th day** of **September, 2019**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**